IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

LINDA S. O'BRYAN,

    Plaintiff,

v.          CIVIL ACTION NO.   5:13-cv-25981

SYNTHES, INC., and
JOHNSON & JOHNSON,

    Defendants.


**MEMORANDUM OPINION & ORDER**

  The Court has reviewed the *Motion to Dismiss on Behalf of Defendant, Johnson & Johnson* (J&J) (Document 11), and accompanying *Memorandum of Law in Support* (Document 12). The Court has also reviewed Plaintiff Linda O'Bryan's *Response to Defendant J&J's Motion to Dismiss* (Document 13), and J&J's *Reply to Plaintiff's Response* (Document 14). After careful consideration of the parties' written submissions and the entire record, the Court finds that Defendant J&J's motion should be granted.


    **I.**  **FACTUAL AND PROCEDURAL BACKGROUND**

  This personal injury action arose out of complications surrounding the implantation of a "seven-hole Synthes plate" into the Plaintiff's fractured right fibula following a fall down a flight of stairs. (Document 1-2 at 6) (Complaint at 6.) The Plaintiff suffered the fall on April 28, 2011. After consulting with her doctor, she initially attempted to let the fracture heal on its own, but when that route proved untenable, she elected to undergo right fibula nonunion fracture surgery at

Raleigh General Hospital on October 11, 2011.  (*Id*. at 6-7.)   Complications arose following the surgery and it was discovered that the implanted plate had broken.  As a result, Plaintiff underwent revision surgery to remove the broken plate and implant a new one.  (*Id*. at 7.)   As of February 1, 2012, the fibula fracture had healed.   (*Id*.)

On or about September 13, 2013, the Plaintiff filed a four count complaint in the Circuit Court of Raleigh County, West Virginia, against Defendants' Synthes, Inc. (Synthes), and Johnson & Johnson.  In a nutshell, the Plaintiff alleges that Defendant J&J agreed to acquire Defendant Synthes, Inc., before the Plaintiff underwent the plate implantation, and as a result "became liable for the debts of [Synthes, Inc.] and became a successor in interest to Defendant Synthes." (Document 1-2 at 5.)   The Plaintiff seeks to pierce the corporate veil between Defendants J&J and Synthes, Inc., because they are "in fact alter-ego entities of each other and are one legal entity for purposes of this action."  (*Id*.)   She then lists various factors for treating the two Defendants as one entity.  (*Id*.)   The Plaintiff alleges negligence in Count I, strict liability in Count II, breach of warranty in Count III, and seeks punitive damages in Count IV.   (*Id*. at 7-11.)   The Plaintiff seeks to hold the two Defendants jointly and severally liable, and prays for "compensatory damages, punitive damages, attorney's fees, costs and disbursements of this action, prejudgment and post-judgment interest, and for such other relief as the court may deem appropriate."  (*Id*. at 13-14.)

On or about October 17, 2013, the Defendants filed a *Notice of Removal* (Document 1) pursuant to 28 U.S.C. §§ 1441(a), 1446(a), and 1332.  A review of the docket indicates that the Plaintiff never filed a motion to remand or otherwise opposed removal.  On November 11, 2013, Defendant J&J filed a *Motion to Dismiss* (Document 11), and accompanying *Memorandum of Law*

2

*in Support* (Document 12). The Plaintiff filed her *Response to Defendant J&J's Motion to Dismiss* (Pl.'s Resp.) (Document 13) on December 6, 2013.[1] Thereafter, on December 13, 2013, the Defendant J&J filed a *Reply to Plaintiff's Response* (Def.'s Rep.) (Document 14.)

## II. STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). "[T]he legal sufficiency of a complaint is measured by whether it meets the standard stated in Rule 8 [of the Federal Rules of Civil Procedure] (providing general rules of pleading) . . . and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.)" *Id.* Federal Rule of Civil Procedure 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In reviewing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint." *Erikson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Furthermore, the Court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E.*

---

[1] The Plaintiff attached the following as exhibits to her response in opposition: (1) an undated 3-page copy of an excerpt from a product brochure describing the pertinent implanted stainless steel LCP One-Third Tubular Plate with Collar; (2) an undated 2-page copy of a brochure announcing the merger agreement between the Defendants; (3) a 5-page copy of the Defendant J&J's SEC Form 10-K for the fiscal year ending December 30, 2012; and (4) an undated 1 page copy of an SEC EDGAR search result.

3

*Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice… [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570.) In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 570.) In the complaint, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557.) "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

### III. DISCUSSION

Defendant J&J seeks dismissal of the Plaintiff's complaint because she failed to plead a required prong of the alter ego test, failed to plead factual allegations to prevent the granting of the motion to dismiss, and because Defendant J&J is not the direct parent corporation of Defendant Synthes, Inc. (Document 12 at 4-6.) The Court considers the parties' arguments below.

4

J&J first argues that it is not the alter-ego of Synthes and that the Plaintiff's complaint fails to allege that J&J used its corporate structure to perpetrate a fraud or do grave injustice to the Plaintiff, a required element for piercing the corporate veil in a tort context.  J&J states that the applicable analysis in a tort case includes a "multi-factor, totality of the circumstances test" which requires "examination of nineteen specific factors" in connection with "evidence that J&J attempted to use its corporate structure to perpetrate a fraud or do grave injustice on an innocent third party seeking to pierce the veil."  (Document 12 at 3-4.) (internal citations and quotation omitted).  The Defendant cites *Laya v. Erin Homes, Inc.,* for the veil-piercing test and the appropriate factors to be analyzed under West Virginia law.  (*Id.*); 352 S.E.2d 93 (W. Va. 1986). Simply put, the Defendant posits that even if the Plaintiff "had alleged a threadbare legal conclusion that J&J had somehow misused its corporate structure and that misuse caused [Plaintiff] harm, [Plaintiff] could not plead any facts which would raise a right to relief under [a tort veil-piercing] theory above the speculative level."  (Document 12 at 4.) (internal citations and quotations omitted).

Next, the Defendant maintains that the Plaintiff merely cited to the statutory language surrounding the *Laya* test to support piercing the corporate veil, and that these references are nothing more than "threadbare legal conclusions that are not entitled to the assumption of truth." (*Id.* at 5.)  The Defendant claims that the fact that J&J acquired Synthes is not in and of itself enough to satisfy the alter-ego allegation or to make J&J liable for the acts of its subsidiary.  (*Id.*) Finally, the Defendant maintains that Synthes is not a direct subsidiary of J&J, but instead is a wholly owned subsidiary of DePuy Synthes, Inc., which is in turn a wholly owned subsidiary of

5

Johnson & Johnson International, which is itself a wholly owned subsidiary of J&J. (*Id*.) Thus, J&J argues, the Plaintiff must allege sufficient facts to support piercing all three corporate veils.

The Plaintiff responds that she agrees with the Defendants that *Laya* is the appropriate test, but disagrees that she failed to plead the required facts to support piercing the corporate veil. (Document 13 at 2-3.) She states that she "alleged many of the factors set forth in the *Laya* test," and that her use of the words "inequality" and "unfairness" is interchangeable with "fraud" and "injustice." (*Id*. at 3-4.) The Plaintiff excuses her partial pleading of the nineteen factors in the *Laya* test because the "corporate machinations between [the two Defendants] are not generally publicly available" and that "the best Plaintiff can do is plead the knowledge available to her and the elements for piercing the corporate veil." (*Id*. at 4.) She argues that the known facts alleged in her complaint suffice to plausibly support piercing the corporate veil. (*Id*.) With respect to the complicated and multi-tiered corporate structure allegedly encompassing Defendants' Synthes and J&J's relationship, the Plaintiff stresses that this is a question of fact not appropriate to support dismissal at this stage, and that J&J's SEC 10-K report does not identify any intermediary corporations, but only the fact that Synthes is a subsidiary of J&J. (*Id*. at 4-5.)

The Defendant replies that the Plaintiff's response disregards well known Supreme Court precedent, and that the Plaintiff's reliance on SEC filing materials is misplaced because such is not relevant at this stage of the litigation. (Document 14 at 1.) The Defendant reasserts that the Plaintiff has failed to plead the required elements to show an alter ego under West Virginia law and that she pled no facts that show, or even insinuate, that J&J used or attempted to use its corporate form to perpetrate fraud. (*Id*. at 2.) The Defendant stresses that the Plaintiff has merely engaged

6

in a formulaic recitation of the factors underlying a piercing the corporate veil inquiry and thus runs counter to the teachings of *Iqbal* and *Twombly*.  (*Id*.)

With respect to the Plaintiff's assertion that she could not plead more facts because she did not know them at the time the complaint was filed, the Defendant maintains that this does not entitle Plaintiff to a fishing expedition or enable her to propound costly discovery on J&J. (Document 14 at 3.)  The Defendant then cites a string of cases regarding what is needed to sufficiently allege a claim for piercing the corporate veil in a tort context to survive a motion to dismiss, and reiterates that the Plaintiff has failed to satisfy her burden.  (*Id*. at 3-4.)  Finally, the Defendant, again, states that the Plaintiff's assertion that J&J owns Synthes is not sufficient to establish an alter ego relationship.  (*Id*. at 4.)

The Court agrees with the Defendant's position that the Plaintiff has failed to allege facts sufficient to defeat a motion to dismiss.  A plain review of the Plaintiff's complaint supports such a finding.  With respect to piercing the corporate veil, the Plaintiff's complaint alleges that:

> As a result of Defendant Johnson & Johnson's acquisition of Defendant Synthes, Defendant Johnson & Johnson became liable for the debts of Defendant Synthes and became a successor in interest to Defendant Synthes.  In addition, Defendants Johnson & Johnson and Synthes became agents, servants, employees, and parents and subsidiaries, of each other; and although they purport to be separate corporations, they are in fact alter-ego entities of each other and are one legal entity for purposes of this action based upon the follow facts:
>
>> (a) Commingling of funds between the various Defendants (and with other entities);
>>
>> (b) Identical equitable ownership of the Defendants;
>>
>> (c) Identity of directors, officers, and managers responsible for the supervision and management of the Defendants;

7

>    (d) Use of the Defendant corporations as mere shells or conduits to operate a single venture or some particular aspect of the business of one or more other corporations;
>
>    (e) Use of the same business offices or locations by the Defendants;
>
>    (f) Employment of the same employees and attorneys by the Defendants;
>
>    (g) Use of the Defendant entities as conduits to procure labor, services or merchandise for other entities;
>
>    (h) The formation and use of the Defendant corporations to assume the existing liabilities of other entities; and
>
>    (i) Other relevant factors.
>
> Furthermore, failing to treat Defendant Johnson & Johnson and Defendant Synthes as alter-egos of each other would result in inequity and basic unfairness.

(Document 1-2 at 8-9.)

As an initial observation, the Court notes that "decisions to look beyond, inside and through corporate facades must be made case-by-case, with particular attention to **factual** details." *Southern Electrical Supply Co. v. Raleigh County National Bank*, 320 S.E.2d 515, 523 (W. Va. 1984) (emphasis added). The Court notes that the parties are correct, and that the applicable test for piercing the corporate veil in a tort setting is an analysis of the totality of the circumstances. As the West Virginia Supreme Court noted in *Laya*, factors that must be weighed when deciding whether piercing the corporate veil is appropriate are:

>    (1) commingling of funds and other assets of the corporation with those of the individual shareholders;
>
>    (2) diversion of the corporation's funds or assets to noncorporate uses (to the personal uses of the corporation's shareholders);

8

(3) failure to maintain the corporate formalities necessary for the issuance of or subscription to the corporation's stock, such as formal approval of the stock issue by the board of directors;

(4) an individual shareholder representing to persons outside the corporation that he or she is personally liable for the debts or other obligations of the corporation;

(5) failure to maintain corporate minutes or adequate corporate records;

(6) identical equitable ownership in two entities;

(7) identity of the directors and officers of two entities who are responsible for supervision and management (a partnership or sole proprietorship and a corporation owned and managed by the same parties);

(8) failure to adequately capitalize a corporation for the reasonable risks of the corporate undertaking;

(9) absence of separately held corporate assets;

(10) use of a corporation as a mere shell or conduit to operate a single venture or some particular aspect of the business of an individual or another corporation;

(11) sole ownership of all the stock by one individual or members of a single family;

(12) use of the same office or business location by the corporation and its individual shareholder(s);

(13) employment of the same employees or attorney by the corporation and its shareholder(s);

(14) concealment or misrepresentation of the identity of the ownership, management or financial interests in the corporation, and concealment of personal business activities of the shareholders (sole shareholders do not reveal the association with a corporation, which makes loans to them without adequate security);

(15) disregard of legal formalities and failure to maintain proper arm's length relationships among related entities;

>(16) use of a corporate entity as a conduit to procure labor, services or merchandise for another person or entity;
>
>(17) diversion of corporate assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors, or the manipulation of assets and liabilities between entities to concentrate the assets in one and the liabilities in another;
>
>(18) contracting by the corporation with another person with the intent to avoid the risk of nonperformance by use of the corporate entity; or the use of a corporation as a subterfuge for illegal transactions; and
>
>(19) the formation and use of the corporation to assume the existing liabilities of another person or entity.

*Laya*, 352 S.E.2d at 98-99. The court in *Laya,* when discussing piercing the corporate veil*,* paid particular attention to the fact that the "totality of the circumstances test provides a more enlightening analysis than merely applying metaphors, like simulacrum, alter ego [and] instrumentality." *Id*. at 348. (internal quotations and citations omitted).

Here, a comparison of the allegations and "facts" in the Plaintiff's complaint with the nineteen *Laya* factors, reveals that the Plaintiff merely recited language from *Laya* and alleged that the Defendants acted in accordance therewith. However, there are no factual allegations in the complaint to buttress, explain or otherwise support piercing the corporate veil in this instance. For example, the Plaintiff failed to plausibly plead any indication of *how* the Defendants allegedly commingled funds or *how* J&J used Synthes as a mere shell or conduit to operate a single venture. Further, the Plaintiff failed to allege *any* fact which could be construed to support a plausible finding that the Defendants employed the same employees or used the same business office. *In totem*, the Plaintiff has failed to allege *any* fact which could support piercing the corporate veil, aside from the fact that J&J allegedly owns Synthes. However, this is not enough to defeat the

threshold inquiry of whether she has stated a claim upon which relief could be granted. As referenced above, "this plausibility standard **requires** a plaintiff to **demonstrate more than** 'a sheer possibility that a defendant has acted unlawfully.'" *Francis*, 588 F.3d 186, 193 (quoting *Twombly*, 550 U.S. at 570) (emphasis added).

While it is true that the ultimate trier of fact will usually need to determine questions of fact relative to piercing the corporate veil, supportive facts must first be alleged. Here, it is apparent that the Plaintiff's complaint falls short in alleging those necessary facts. *Laya*, 352 S.E.2d at 102. The Plaintiff asserts that failing to treat J&J and Synthes as alter-egos of each other would result in inequity and basic unfairness, yet fails to offer any fact or reasons why this would be the case. Again, such threadbare recitals are not sufficient, but instead the Plaintiff here must "articulate facts [that] when accepted as true," demonstrate that she has stated a claim upon which relief can be granted. *Twombly*, 550 U.S. at 557. Again, the sole "fact" that the Plaintiff relies on in the complaint is that J&J purchased Synthes sometime in 2011 or 2012. This information, when accepted as true, hardly demonstrates that J&J was an alter ego of Synthes. Contrary to Plaintiff's suggestion, this is not an issue of semantics, but one of legally required pleading. The Court further notes that the Plaintiff's assertion that she pleaded everything she knew at the time as support for denying the motion to dismiss is unavailing, for the reasons stated herein.

In conclusion, the Court, by granting the Defendant J&J's motion to dismiss, does not make a finding that J&J was not an alter ego of Synthes, or that Synthes did or did not act negligently or subject itself to strict liability. The Court has considered and decided only the narrow issue of whether the Plaintiff's complaint, as currently structured, alleges facts sufficient to support piercing the corporate veil between J&J and Synthes such that J&J could be held liable for

11

Synthes' alleged tortious conduct. In this regard, the Plaintiff's complaint has failed to state a cause of action against Defendant Johnson & Johnson, and Johnson & Johnson is entitled to be dismissed from this action, without prejudice.

## IV.　　CONCLUSION

Wherefore, after careful consideration and based on the findings herein, the Court does hereby **ORDER** that the Defendant Johnson & Johnson's *Motion to Dismiss* (Document 11) be **GRANTED**, and that the Plaintiff's Complaint against Johnson & Johnson be **DISMISSED WITHOUT PREJUDICE**.

The Court further **ORDERS** that the Defendant Johnson & Johnson be removed from this action.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

　　　　　　　　　　　　　　　　ENTER:　　January 27, 2014

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　IRENE C. BERGER
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE
　　　　　　　　　　　　　　　　SOUTHERN DISTRICT OF WEST VIRGINIA